Our next case this morning is United States v. DeMarco. Ms. Forster. May it please the Court, my name is Claire Forster and I represent the defendant-appellant Michael DeMarco. Throughout the prosecution of this case, Mr. DeMarco admitted to wrongfully spending the majority of the proceeds from the home equity line of credit. The only issue in this case was whether Mr. DeMarco intended to defraud Mr. Suarez or Bank of America at the time of the wire transfer. And the government has agreed that the district court did err in excluding testimony regarding the prior inconsistent statement of Mr. Suarez to Agent McCune. They admit that initially Agent McCune acknowledges in his notes that Mr. Suarez identified a builder as the purported purchaser of the property, not Chase Bank. Chase Bank was Michael DeMarco's employer. And this error, even in itself, is not harmless. Mr. Suarez was the government's primary witness on the issue of Mr. DeMarco's intent. He insisted throughout the trial that Mr. DeMarco had identified Chase Bank as the buyer and developer. He also specifically denied ever telling Agent McCune that it was a builder and not Chase Bank that Mr. DeMarco identified as the purported purchaser of the property. And during the trial, defense counsel sought to elicit testimony from Agent McCune impeaching Mr. Suarez on both of these points, but the district court wouldn't allow it. This wasn't a harmless error because it's common knowledge that Chase Bank does not go out and buy properties to put buildings on them. Their business is not development of property. And I think a jury would significantly be more likely to find that Mr. DeMarco's statements to Mr. Suarez were false and fraudulent if he was telling Mr. Suarez that Chase Bank was the purchaser, not just a builder. And I think the error is especially not harmless when you couple it with other prior inconsistent statements that Mr. Suarez made. At trial, Mr. Suarez also testified multiple times that he never saw Mr. DeMarco again after the HELOC closing. This would have been a really important piece of evidence against Mr. DeMarco reflecting an intent to defraud. All of a sudden, this HELOC closes. He disappears off the face of the earth. Mr. Suarez also testified that he learned about the HELOC at the closing on June 8th of 2007. Now, it's really difficult to even discern this from the record because there were so many interruptions by the government while defense counsel was trying to impeach Mr. Suarez on these points. But defense counsel ultimately was able to bring out and introduce evidence that Mr. Suarez testified at a deposition taken May 9th, 2012, that it was two weeks after the closing that he first learned about the HELOC, not at the closing itself, and that he learned about the HELOC during a meeting two weeks after when he met with Mr. DeMarco at his office. The bottom line here is that we see Mr. DeMarco's story changing and changing significantly and materially over time. Additionally, if not for the district court's erroneous ruling, Agent McCune would have been asked to testify regarding Mr. Suarez's initial statement to him, indicating that Mr. Suarez willingly participated in the HELOC application, with the understanding that some of the proceeds would be used to consolidate his debt and maybe facilitate the development of his property. So we see initially Mr. DeMarco told Mr. Suarez it's a builder interested in buying and developing the property. Mr. Suarez willingly participated in the process of the HELOC. Mr. Suarez met with Mr. DeMarco again at least one time. Right. The gravamen of the fraud, though, is not just the establishment of the home equity line of credit under false pretenses, which I think what you're talking about, at least thus far, but it's doing so with the intent to self-deal and steal all the money. Right. And set up the bank account that would receive the funds from the home equity line in his own name, that is the defendant's own name, and then use it to pay his own personal luxury expenses. Right. And what I would say is that all of these details that change do speak directly to the issue of intent. You know, it's more likely that it wasn't a false representation if he was saying it was a builder and not Chase Bank. Right, but that's my point. The gravamen of the fraud is not that he made false representations about who the buyer was. The gravamen of the fraud is that he had this elaborate scheme to convince Mr. Suarez that a home equity line of credit was needed in order to facilitate the sale of his property and then channeled the funds to himself in a phony bank account that was set up for that purpose, and then that's what he did.  I think Mr. DeMarco maintained throughout the case that that was not the purpose. That he just decided after the fact he would spend all the money on himself? Well, I think what happened was he thought that he had a builder or had the ability to find a builder. Well, there's no evidence to support the need for a home equity line of credit because the buyer insisted on it. No, I agree. Whoever the buyer was. I agree. There was no buyer. That's the whole point. I think what the record reflects is that they discussed Mr. Suarez's debts and they discussed, and so part of what the home equity line of credit was was, hey, we're going to get this money. They basically did what most of America does. They bought on credit and they thought, we'll have this money eventually from the sale of this property, so let's use it now and we'll get out of debt. And you see Mr. DeMarco use the bulk of the money also to pay his debts for cars he already owned and things like that. He did take a couple vacations, but it was to Wisconsin Dells, not Europe. It's too fraudulent even though the destination is not very glamorous. Right. So anyway, I think what Mr. DeMarco maintained, and his story didn't change during the prosecution of this case, was, look, I intended to sell this property for him. We took out a HELOC. We're going to pay off our debts. Ours? Well, Suarez's, and I think he maintained that it was a commission, that he would have been entitled to some of the money by virtue of it being a sales commission, which is why he got involved in the first place. And then he did, in fact, pay more than $30,000 of Mr. Suarez's debt, and the reason this fraud was discovered is because additional money was put into Mr. Suarez's account. And then when he couldn't sell the property, he admits he wrongfully didn't find Mr. Suarez, didn't try to pay the money back to the bank, didn't try to pay Mr. Suarez back, and that's where he went wrong. But he's saying, you know, this happened after the wire transfer. It didn't happen. It wasn't my goal from the outset to take all this money from this man. It was I was going to help with this business deal, and we were both going to make money from it, and then it kind of all fell apart, and I had already spent the money, and I hid, you know, I hid. So, and I think, you know, these details about whether it was an interest, whether it was a builder that was interested, whether Mr. Suarez had knowledge of the HELOC and participated in it, whether they met again afterwards, discussed, you know, payment of these debts, things like that, that does, those details do speak to his intent, and if you fast forward nearly six years later at trial, you have the main witness against Mr. DeMarco saying that none of that happened, that it was Chase Bank who was going to buy the property, that he was totally unaware of the fact that a HELOC was happening until he arrived at the closing. You have him saying he never, ever saw or spoke with Mr. DeMarco again, even though he tried to contact him. So those are very, very different stories, and I think the exclusion of those prior inconsistent statements really certainly affected the outcome of the case. The prosecution's case against Mr. DeMarco would have been significantly less persuasive had the jury been aware of all of these inconsistencies, and I think Mr. DeMarco is entitled to a new trial so that the jury can hear the properly admitted evidence of what he was saying right after these events occurred and then what he's saying now six years later. So, and additionally, the court also admitted testimony disclosing redacted material that was presented, and we think that was an abuse of discretion. You've got several sentencing challenges, too? Two, yes. And maybe in the interest of time you want to move to those? Two, sure, sure. I would just say I do think if the one exclusion of prior inconsistent statements is not found to be harmful, I do think the combination of the two would cumulatively deprive him of a fair trial. As far as the enhancements, I think I'd like to focus on the abuse of the position of trust. I think the court clearly erred in applying that enhancement. Probation didn't recommend it, and obviously certainly the district court is free to disregard the probation office's recommendations. But in this case, the court didn't undertake any analysis or application or apply the enhancement consistently with the case law. They found that the enhancement applied because Mr. DeMarco gained Mr. Suarez's trust and lied about the need for a HELOC, and the district court also noticed that Suarez believed that Mr. DeMarco could help him sell his property because he was the vice president and branch manager. But that doesn't reflect the undertaking of this two-part test that this court has said the district court should undertake. First, asking whether the defendant occupied a position of trust in the first place, and with respect to Chase Bank, the record just doesn't establish one way or the other. The government just is relying simply on his job title to assume he occupied a position of trust. But we also all know there's a Chase Bank on almost every other block in the Chicagoland area, so there's a lot of branch managers and vice presidents. And the case law says that title alone is not enough. Was I their vice president in name only or what? No, I think you become a vice president. You don't think that when you go into a bank you're talking to a vice president, you're talking to somebody who knows what he's talking about? You should rely on what he tells you? No. Okay. Yeah, there's a lot of vice presidents at banks nowadays. Stay out of banks, though. But anyway, the government relied on the job title. They didn't introduce any facts relating to a compensation. Was it hourly salary, any duty, degree of autonomy, employees he oversaw? That's not really necessary. The guidelines commentary specifically explain that a bank executive's fraudulent scheme qualifies for this enhancement. And as the vice president and branch manager, he's a bank executive. In some cases the title may not resolve the question, but in this case it certainly does, which is why the district court focused on what the abuse of that position of trust actually consisted of and whether it facilitated the scheme. So in moving on to that, I would also just briefly like to say that I think with respect to Mr. Suarez, the district court actually found at sentencing that Mr. Suarez didn't participate in this HELOC or agree to open the checking account, and that would suggest that there was no authority or discretion given by Mr. Suarez to DeMarco to do this. So it was contrary to its finding to then say, oh, but then he must have had more than an ordinary degree of reliance on your integrity and honesty. Moving to whether he significantly facilitated the crime, helping incidentally is not enough. His position of the bank was not a necessary component to the commission of the crime. It just helped incidentally. Really all they're relying on is that the position could be used to help sell the property, but that's not unique to a branch manager. That could be a successful real estate broker, businessman, developer. You would have a similar belief. The knowledge of HELOC is not unique to a branch manager or even a bank employee. People do that all the time, and Mr. DeMarco's attendance at the closing that the government brings up and diversion of the loan statements still, they similarly weren't a function of Mr. DeMarco's position as a branch manager, a trusted neighbor, friend, anybody else could have attended that closing and helped him fill out a loan application using their own address. And I think the evidence showed that several HELOC applications submitted by Mr. DeMarco were rejected prior to the one approved by Bank of America, and that the wire transfer was reversed. A linear rebuttal type. I know. So I would say that the position didn't help with any of those aspects of the charge crime. And with that, I will turn it over to the government. Thank you. Ms. Frimpong. Good morning, Your Honors. May it please the Court, my name is Nana Frimpong, and I represent the United States. With respect to the one evidentiary error that the government has conceded, that error was harmless because of the overwhelming evidence of defendant's guilt in this case. When he was interviewed by law enforcement, he admitted to lying to Suarez to get the loan. He admitted to lying to Suarez by saying that he could sell Suarez's property for $2.6 million. He admitted to lying to Suarez about the existence of a buyer for Suarez's property, which as the judge referenced earlier, that was the goal from the outset. There was no buyer. That was the fraud. When he testified at trial, he admitted to misrepresenting to Suarez why Suarez should get the loan, the notion that you would need a HELOC to sell your property. This speaks directly to the issue of an intent to defraud right from the beginning, and this was his statement to law enforcement when he was confronted with the fraud. He admitted to procuring the loan. He admitted to then diverting the funds into his own accounts, and then spending the bulk of that quarter million dollars on himself. He also admitted on the stand to, quote, doing him wrong, him being Suarez. So not only did the defendant admit to the core aspects of the fraud, these admissions were all corroborated by other documentary and testimonial evidence at trial. And further, a trial defendant testified to a story which was fantastical at best, was riddled with falsehoods, and it was in conflict with his own prior statements to law enforcement, and also in conflict with the evidence presented at trial through documents and other witnesses. In sum, he essentially attempted to saddle an elderly gentleman, and did, with a loan on his property, and then using the vast majority of those proceeds on himself. This was the fraud, and the evidentiary error was harmless. Now with respect to these other inconsistencies, the defendant claims were barred, and probably barred by the district court. There was simply no impeachment here for the defendant to perfect. There was simply no occasion for the district court to make an error. The defendant never raised any of these prior inconsistencies during the lengthy cross-examination of Michael Suarez. The defendant was not prevented from raising these prior inconsistencies with Suarez, but simply chose not to do so. Under Rule 613B, this failure is fatal. There are only two options for the admissibility of impeachment evidence, evidence which is otherwise hearsay evidence. And the two options are, first, that the witness is provided an opportunity to either admit or deny those statements, and secondly, if justice so requires. Now there's no authority that the defendant can cite to in support of the notion that broad notions of justice could somehow cure what was a strategic error on the defendant's part in failing to properly impeach Suarez, as a witness that by their own account, as heard by the court today, was central to their defense.  It's worth noting that the defendant did not even seek to attempt to impeach Suarez. It's clear from the context of the sidebar discussion that the court's ruling was limited to the identity of the buyer. The defendant didn't attempt to impeach, to seek to perfect an impeachment, granted an impeachment that they had not yet laid the foundation to perfect, but didn't even seek to elicit additional evidence of any of these prior inconsistent statements during the cross-examination of Agent McCune. Now I'll turn briefly to the abuse of trust issue raised by defense counsel. Now, as this court has held, the determination of whether or not there's an abuse of position of trust must be made from the perspective of the victim. It's clear here that Suarez, by his own testimony, believed that as vice president, the defendant could help him sell his property. He could help him sell his property to Chase Bank. In fact, he delisted his property at defendant's request because he believed that this would enable Chase to purchase his property. This was more than the ordinary degree of reliance to delist your property and sign a quarter million dollar loan. And in fact, DeMarco himself testified that he abused Suarez's trust. This is clearly an instance where there was an abuse of a position of trust. And contrary to defendant's position, it was this position that helped him both in the commission and the concealment of the crime. It was the setting in which he met Suarez, gained Suarez's confidence and trust as vice president and branch manager, the way in which he had access to his financial information, the skills and the discretion that he had as branch manager helped him engineer the fraud and conceal it. He had expertise in HELOCs. He handled hundreds of them in a year and even put the bank address on the HELOC so that he would ensure that no notifications were being received by the victim. This is precisely the instance, as the court noted, as the commentary to the guideline notes, that a bank executive involved in a loan scheme. This is precisely the instance where there was an abuse of a position of trust. Now with respect to the various other issues raised by the defendants. Please refresh my recollection. The inconsistent statement of Suarez was what? Excuse me, Your Honor, the one to which the government has conceded error? With respect to Suarez, when he initially spoke with the FBI agent to report the fraud, indicated that the buyer that Michael DeMarco told him would purchase his property was a builder, an unspecified builder. At trial, he testified that that buyer was in fact Chase Bank. And the fact that it was Chase Bank made it look somewhat more damning, did it not, for the defendant? I don't think necessarily, Your Honor. The issue of whatever the identity was of the buyer is not really germane, as the district court held, to the actual fraud, which he admitted to the core aspects of it. The fact was there was no buyer. But the defendant was Vice President Chase. Chase was a buyer, and you'd think he'd have a little bit more say as to how that HELOC was going to go through, right, as opposed to if it were a builder or somebody else. I thought that's what you said a few moments ago in respect to the abuse of trust, and that's why I'm going back and now I'm beginning to worry about whether or not the inconsistent statement might have meant something. You're relying on the fact that he was the Vice President of Chase for purposes of the abuse of trust. Why wasn't it important that the buyer was Chase? Well, I think the crime, the elements of the crime were an intention to defraud on the part of the defendant. So what the victim, what Michael Suarez believed or what he found persuasive, what he relied upon in believing the fraud or becoming victim to the fraud is not relevant to the crime. So with respect to the error, the government has conceded error on that, but it was on a limited issue. It was not the identity of the buyer was not germane to the issue. It was the fact that there was not even a buyer. But that limited issue becomes kind of important on the abuse of trust. Well, it's a different analysis, Judge. I believe it's a different analysis there because now we're not dealing with the elements of the crime as are required at trial. Now we're dealing with the assessment, whether in all the totality of the evidence that's before the district court, whether the district court could find... That seems terribly formalistic to me. I mean, it was... It does make it far more probable if, in fact, the defendant said, I'm the vice president of Chase and I'm going to arrange for you to sell this property to Chase. Again, Your Honor, I do believe that that is relevant  to why he may have believed it and gone ahead with the scheme, but it's not relevant to his guilt, or not relevant to the evidence of his guilt. It doesn't speak to whether or not he, in fact, intended to defraud. That's irrelevant to that assessment. I've got your point. I've got to think about it, but I've got your point. Next. Thank you. Now, with respect to the other issues raised in defendant's appeal, the government would rest on their briefs with respect to issues of whether or not the district court committed any error in admitting the redacted HELOC and on the issue of whether or not the district court committed clear error in adopting a use of sophisticated means enhancement. So unless there are any additional questions for me, I would end by asking the court to affirm the conviction. What was particularly sophisticated about this? It was particularly sophisticated. The case law that this court has outlined with respect to the use of the sophisticated means is that it's not that the crime itself needs to be deeply intelligent or have a great degree of sophistication. It's really that there were deliberate steps taken that make the defense difficult to detect, and these deliberate steps are over and above the general steps that any fraud would have to conceal the crime. Here he convinced a vulnerable victim he could sell his property. He caused the victim to delist the property, submitted various HELOC applications to various banks. He went to the closing and rushed it to attempt to steer the process and reassure the victim when the victim started to have second thoughts. He made sure his business address was listed on the HELOC so that notifications with respect to the loan would come to him. He opened a joint account without the victim's knowledge using his home address, so, again, any indications as to deposits that were coming to that account would come to him alone and not to the victim. And then he transferred the funds to various accounts that he controlled for the purpose of then using them. This is clearly an instance where he went over and beyond what would be a simple stealing of loan proceeds. I believe that the various myriad acts that he took to both commit the fraud and attempt to conceal it do justify the use of a sophisticated means of enhancement. What you've described really just is a standard theft by fraud, an embezzlement, self-dealing of the loan proceeds. It's not really complicated. I believe this court has held that the issue is not the level of complication or whether the crime itself on its face appears to be deeply intelligent or not one where it could be easily detected, but it's really these additional deliberate steps taken on the part of the defendant to attempt to conceal this fraud. And I believe the steps that he took were myriad from the various applications. All the various items that I mentioned were actions that were numerous. Actually, it wasn't concealed. It was right there out in the open at the closing, but nobody read the address on the closing documents. I mean, there were steps taken to accomplish the fraud very successfully, but as far as concealment is concerned, there really weren't steps taken to conceal what was going on, so far as I can tell, anyway. If Mr. Suarez had just looked at what the documents said, he would have seen that he was getting ripped off. Well, I think the record does reflect that Mr. Suarez was easily confused. He was clearly a vulnerable victim. The defendants, by his own testimony, had to tell him things five or six times before he would understand. Right, but that's a different enhancement. We're talking about sophisticated means here, and we can't bootstrap sophistication by virtue of the lack of sophistication of the victim. Understood, Judge. I was only referencing his lack of sophistication in response to the question on why or not he would not have discovered the fraud earlier. So I think the fact that the loan documents, had he read them or looked at them closely, would have revealed the fraud, not to the fact that this was an unsophisticated scheme, but rather to the fact that he himself was not deeply sophisticated or at least was not, by the defendant's own account, somebody who had a great understanding about what was going on. This was precisely why he was able to be deceived. And the fact that the defendant had what was a vulnerable victim, Your Honor is correct, that he was able to deceive, and then to prevent anybody else, because essentially the documents, the funds were coming to him. The documents were with the victim, Mr. Suarez. What would the range have been without the sophisticated means enhancement? I believe it would have been a 25, a level 25. And my apologies, Your Honor, I don't recall the range. But it would have been, instead of a level 27, it would have been a level 25. This was a below-guideline sentence. It was far below-guideline sentence, and the district court cannot be said to have clearly erred in finding that this enhancement was applicable. Did the court, in imposing sentence, say any of the usual magic words that this would have been the sentence, regardless of the guidelines calculation? The court did not. I think we're done. Unless any further questions, I'll end by asking to confirm the conviction and sentence. Thank you. Thank you. Ms. Forster, anything further? I just wanted to briefly touch upon the government's argument that the defendant wasn't prevented from introducing evidence of other prior inconsistent statements. It appears from the record that the defense counsel did view the court's ruling broadly as relating to any prior inconsistent statements that Mr. Suarez made to Agent McCune. Well, how did this actually unfold when the cross-examination was attempted on the prior inconsistent relating to the buyer? There was an objection from the government? Before any specific question was even asked about any statement, the defense said you met with Mr. Suarez as well, and immediately the government jumped up and made a blanket objection to any inconsistent statement coming in. There wasn't even a question about a statement to object to. It was literally a blanket objection. And then I think the district court, when they got up and tried to discuss it sidebar, the district court confusingly invoked this rule of evidence that didn't apply, and the defense counsel continued to try to raise, hey, these prior inconsistent statements, they should come in their impeachment. They also established what his understanding was when the events happened long ago, and the district court sent a strong message that he was not going to allow the admission of any prior inconsistent statements there. And I do realize, I can see, that he failed to specifically raise Mr. Suarez's prior inconsistent statement that he willingly participated in the HELOC, but I think to the extent, you know, that creates a bit of a conundrum, but I think to the extent it does, it was because of the government and the court that this conundrum, I think the defense counsel saw it as, I'm not allowed to raise prior inconsistent statements. I'm not allowed to bring up what Mr. Suarez said to Agent McCune because the court has invoked this rule, and the government has blanketly objected to me doing that. And I see my time is up, so I would just ask that you either vacate the conviction and remand for a new trial based on the evidentiary areas, or alternatively that you would vacate the sentence and remand for further proceedings. Thank you very much for your time. Thank you. And Ms. Forster, you were appointed by the court to represent your client? Correct. The court thanks you for your service to your client and the court. Thank you. And our thanks to both counsel. The case is taken under advisement.